UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE FALK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | Case No. 17-cv-04871-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 35 |

## I. BACKGROUND

Plaintiffs in this action claim that Defendant's Nissan Sentras for model years 2013 to present have defective continuously variable transmissions ("CVT"). *See* Dkt. No. 19 ("Compl." or "FAC"). Plaintiffs contend that the CVTs "are defective in design, materials, and/or workmanship." *Id.* ¶ 6. These defective CVTs, Plaintiffs contend, cause "sudden, unexpected shaking and violent jerking (commonly referred to as 'juddering' or 'shuddering') when drivers attempt to accelerate class vehicles"; "hesitat[ion] before responding to a driver['s] input on the accelerator pedal, which prevents class vehicles from accelerating as intended by the driver"; as well as "complete transmission failure." *Id.* ¶ 6; *see also id.* ¶¶ 25–26. Plaintiffs state that this "transmission defect creates unreasonably dangerous situations while driving and increases the risk of a crash," and that Defendant continues to lease and sell its vehicles, despite knowing about this defect. *Id.* ¶¶ 6, 9–11, 27–28.

Plaintiffs allege that, within a year of selling the first allegedly defective vehicle, Defendant acknowledged the defect in its "Technical Service Bulletins" ("TSB"). *See id.* ¶¶ 27–38, & Ex. B. Defendant proposed that technicians reprogram the "Engine Control Module" and the "Transmission Control Module." *Id.* ¶ 30. Despite these proposed fixes, Plaintiffs claim that

consumers have continued to submit complaints to both the National Highway Traffic Safety Administration and Defendant. *Id.* ¶¶ 39, 41–52. Named Plaintiffs Michelle Falk of California, Indhu Jayavelu of Ohio, Patricia L. Cruz of New York, Danielle Trotter of Colorado, Cynthia Garrison of Massachusetts, and Amanda Macri of Illinois asked Defendant to repair the defect, but Plaintiffs state that Defendant either did not or could not. *Id.* ¶¶ 8, 17–23.

In response, Plaintiffs filed this putative class action on August 22, 2017, asserting claims on behalf of themselves and all others similarly situated, for violations of California, Colorado, Illinois, Massachusetts, New York, and Ohio consumer protection laws, as well as the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq. See generally* Dkt. No. 1. Plaintiffs then amended the complaint on September 27, 2017. *See* Dkt. No. 19. They seek to represent a nationwide class of "persons who purchased and/or leased in the United States a model year 2013–2017 Nissan Sentra equipped with a CVT." Compl. ¶ 112. They also intend to seek certification of subclasses of purchasers in California, Colorado, Illinois, Massachusetts, New York, and Ohio. *See id.* ¶¶ 113–14. Defendant Nissan North America, Inc. moves to dismiss the amended complaint. Dkt. No. 35 ("MTD").

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*

*St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**III. ANALYSIS**

Defendant moves to dismiss the amended complaint, challenging several of Plaintiffs' fifteen causes of action. The Court addresses each in turn.

**A. Express Warranty (Count 1)**

Plaintiffs contend that every new vehicle is backed by a New Vehicle Limited Warranty (the "Warranty"), which "covers any repairs needed to correct defects in materials or workmanship of covered parts."[1] Compl. ¶¶ 3, 60. The Warranty period lasts for 60 months or 60,000 miles, whichever comes first, and begins on the day the vehicle is delivered to a retailer buyer or is put in use, whichever comes first. *Id.* ¶ 60; MTD at 8. The transmission defect, Plaintiffs allege, is covered by this Warranty. Compl. ¶ 64; *see also id.* ¶¶ 125–35.

Defendant challenges all named Plaintiffs' express warranty claims because Plaintiffs do not identify a specific transmission defect. *See* MTD at 9. Moreover, to the extent Plaintiffs have identified a defect, Defendant suggests that it is a design defect that is not covered under the Warranty. *Id.* In response, Plaintiffs point out that Defendant has attempted to fix the CVT under the Warranty's coverage, as evidenced by instructions in several of Defendant's TSBs. Dkt. No. 49 ("Response") at 9. Plaintiffs also suggest that Defendant's arguments are inappropriate to decide on a motion to dismiss, as they would require the Court to resolve a factual dispute as to whether the alleged defect resulted from a manufacturing or a design problem. *Id.* at 11-12.

Under California Law, a "defect in the manufacture of a product exists if the product differs from the manufacturer's intended result or if the product differs from apparently identical

---

[1] Defendant requests that the Court take judicial notice of the warranties referenced in the complaint. Dkt. No. 36. The Court **GRANTS** Defendant's request for judicial notice with respect to these documents. These documents are referenced in the complaint and are "not subject to reasonable dispute," and the parties did not object to the Court taking judicial notice of the warranties during the January 11, 2018 hearing on Defendant's motion. See Dkt. No. 36 at 2; *No. 84 Employer-Teamster Jt. Counsel Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 925, fn. 2 (9th Cir. 2003).

3

products from the same manufacturer." Cal. Jury Instr.--Civ. 9.00.3. "A design defect, by contrast, cannot be identified simply by comparing the injury-producing product with the manufacturer's plans or with other units of the same product line, since by definition the plans and all such units will reflect the same design." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429, 573 P.2d 443, 454 (1978).

Plaintiffs' allegations are not limited to design defects at this stage in the litigation. The complaint states that the CVTs "are defective in design, materials, and/or workmanship." Compl. ¶ 6. Plaintiffs have identified a number of symptoms that may be attributable to material or workmanship defects. The fact that Plaintiffs allege a defect that is present in all models does not necessarily mean that the defect must be in the design. *See Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017). Here, Plaintiffs have alleged sufficient facts to support a plausible claim that the transmissions "differ from the product the manufacturer intended to sell" in ways that could be attributable to a materials or workmanship defect. *See id.* at 1178. Therefore, even assuming the warranties only cover materials and workmanship defects under California law, *see Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 668 (9th Cir. 2013), Plaintiffs have plausibly alleged the existence of such a defect at this stage.

### B. Implied Warranty (Count 2)

#### i. Merchantability (Jayavelu, Cruz, Trotter, Macri)

Defendant next contends that Plaintiffs Jayavelu, Cruz, Trotter, and Macri cannot state a claim for breach of the implied warranty of merchantability because their vehicles were "*minimally* fit for the ordinary purpose of providing *basic transportation*, and . . . satisfy a *minimum* level of quality, even if they fail to perform exactly as the buyer expected." Dkt. No. 54 ("Reply") at 6 (citing *Haag v. Hyundai*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013)).

Plaintiffs Jayavelu, Cruz, Trotter, and Macri experienced problems with their vehicles soon after purchasing them. Compl. ¶¶ 79–96, 105–111. Plaintiff Jayavelu contends that "almost immediately after her purchase," the "vehicle began to judder and would fail to properly accelerate." Compl. ¶ 80. Plaintiff Cruz "noticed symptoms of the defect, including frequent juddering, a whining noise, and delayed acceleration." *Id.* ¶ 85. In the first month after her

4

purchase, Plaintiff Trotter "noticed transmission failures, including that the vehicle stalled at stoplights, vibrated and jerked under acceleration, had severe lag, would not go more than 20 mph without shaking and exhibited severe juddering at higher speeds." *Id.* ¶ 92. And Plaintiff Macri noticed several years after purchasing her vehicle that "the RPMs were fluttering on the highway," and "[t]he vehicle shook when at a stop and hesitated when accelerating from a stop." *Id.* ¶ 106.

The implied warranty claims of Plaintiffs Jayavelu, Cruz, Trotter, and Macri arise from the state laws of Ohio, New York, Colorado, and Illinois, respectively. Compl. ¶¶ 18–20, 22, 136–39. The laws of each of those states are consistent: the implied warranty of merchantability imposes liability for breach of the implied representation that a product is fit *and safe* for its ordinary intended use. *See, e.g., Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.*, 342 Ill. App. 3d 150, 159, 794 N.E.2d 829, 836 (2003) ("[W]ith regard to automobiles, fitness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects…Breach of an implied warranty of merchantability also may occur where the warrantor has unsuccessfully attempted to repair or replace defective parts.") (applying Illinois law) (internal quotation marks and citations omitted); *White v. DePuy, Inc.*, 129 Ohio App. 3d 472, 478, 718 N.E.2d 450, 454 (1998) ("Implied warranty…imposes liability upon a manufacturer or a seller for breach of an implied representation that a product is of good and merchantable quality, fit and safe for its ordinary intended use") (applying Ohio law) (internal quotation marks omitted); *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 302 (6th Cir. 2015) ("To establish that a manufacturer breached its implied warranty of merchantability, a plaintiff must show that the product was not minimally safe for its expected purpose.") (applying New York law) (internal quotation marks and citations omitted); *see also Shaw v. Gen. Motors Corp.*, 727 P.2d 387, 391 (Colo. App. 1986) (applying Colorado law and considering safety as part of implied warranty analysis).

Defendant has provided no case law from any of these states that stands for the proposition that the safety issues described in Plaintiffs' allegations do not plausibly allege a violation of the implied warranty of merchantability. According to Defendant, because these four plaintiffs did not actually get into accidents as a result of the problems they experienced with their vehicles, and

5

because they continued to drive their cars, the vehicles satisfied the implied warranty of merchantability. *See* Reply at 6. Although the implied warranty does not "require that the goods be perfect…or that they fulfill a buyer's every expectation," it does require *"that the goods sold be of a minimal level of quality." Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433–34 (2d Cir.), *certified question accepted*, 21 N.Y.3d 937, 990 N.E.2d 130 (2013), and *certified question answered*, 22 N.Y.3d 439, 5 N.E.3d 11 (2013) (applying New York law) (internal quotation marks and citations omitted). That minimum level of quality includes a basic level of safety. *See Shaw* 727 P.2d at 391. All of the Plaintiffs experienced problems with their vehicles that implicate both quality and safety. The vehicles' unreliable acceleration alone, based on the allegations, poses a risk for any driver on the road. Further, Plaintiff Trotter identifies actual transmission failures. Compl. ¶¶ 92–95. These allegations are more than sufficient to survive at the pleading stage.

### ii. Privity of Contract (Jayavelu, Cruz, Macri)

Defendant also states that Plaintiffs Jayavelu, Cruz, and Macri lack privity of contract with Defendant, and therefore cannot state a claim for breach of implied warranty. MTD at 12. All three Plaintiffs purchased their vehicles from auto dealerships, rather than directly from Defendant. *See* Compl. ¶¶ 79, 84, 105.

#### a. New York (Cruz)

The implied warranty of merchantability under New York's Uniform Commercial Code § 2–314 is generally limited to parties in privity with the defendant. *See, e.g.*, *Miller v. Gen. Motors Corp.*, 99 A.D.2d 454, 471 (N.Y. App. Div. 1984), *aff'd*, 64 N.Y.2d 1081 (1985) ("Where, as here, the suit has been one to recover for economic loss, it has consistently been held that a cause of action does not lie against a remote manufacturer for the breach of an implied warranty."). Plaintiffs contend that two exceptions to this privity requirement apply under New York law: the "thing of danger" exception and the "third-party beneficiary" exception. *See* Response at 14.

The "thing of danger" exception in New York state law was first articulated by the Court of Appeals of New York in *Goldberg*:

> [W]here an article is of such a character that when used for the

> purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated.

*Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432, 436–37 (N.Y. Ct. App. 1963)). Plaintiff Cruz's claims, including a "kick back," "shuddering," and "delayed acceleration," fall within this category. Compl. ¶¶ 84–90. The symptoms described in the complaint, which could produce erratic and unpredictable behavior at high speeds, would render any vehicle dangerous to drive.

Defendant cites to two unpublished district court cases that stand for the proposition that the "thing of danger" exception does not apply to implied warranty claims involving "purely economic loss." Reply at 7 (citing *Dixon v. Ford Motor Co.*, No. 14-CV-6135 JMA ARL, 2015 WL 6437612, at *4 (E.D.N.Y. Sept. 30, 2015) and *Mahoney v. Endo Health Sols., Inc.*, No. 15CV9841(DLC), 2016 WL 3951185, at *5 (S.D.N.Y. July 20, 2016)). Neither of these cases relies upon New York State case law discussing the "thing of danger" exception.

In contrast, multiple district court cases have expressly applied New York's "thing of danger" exception, relying on *Goldberg* to allow breach of implied warranty claims to proceed against a remote manufacturer, even in cases alleging only economic loss. *See, e.g., Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 541 (D. Md. 2011) (applying NY law); *In re Ford Motor Co. E–350 Van Products Liab. Litig. (No. II)*, CIV. A. 03–4558, 2010 WL 2813788, at *74 (D.N.J. July 9, 2010), *amended on other grounds*, CIV.A. 03–4558 GEB, 2011 WL 601279 (D.N.J. Feb. 16, 2011) (applying NY law); *Hubbard v. Gen. Motors Corp.*, 95 CIV. 4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996); *In re Toyota Motor Corp.*, No. 810ML02151JVSFMOX, 2012 WL 12929769, at *30 (C.D. Cal. May 4, 2012).

This Court agrees with the latter decisions. The Court's task is to attempt to predict how New York's highest court would decide the applicability of this principle to the facts of this case. *Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1111 (9th Cir. 1991) ("[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."). Notwithstanding the substantial difference of opinion among district courts, this Court cannot conclude, in light of *Goldberg*, that the New York Court of Appeals has clearly rejected the "thing of danger" exception to the privity requirement in

circumstances like those presented here. Because the Court finds that the "thing of danger" exception applies, it is not necessary to determine whether the "third-party beneficiary" exception applies to Plaintiff Cruz's claim. The Court **DENIES** Defendant's motion to dismiss Plaintiff Cruz's breach of implied warranty claim.

### b. Illinois (Macri)

Under Illinois' Uniform Commercial Code §§ 2-314 and 2-315, privity of contract is generally a prerequisite to recover economic damages for breach of implied warranty. *See Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 292 (1988). In *Rothe*, the Illinois Supreme Court affirmed the dismissal of an implied warranty claim against the manufacturer, holding that "with respect to purely economic loss, the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller." *Id.* The Court finds *Rothe* dispositive with respect to Plaintiff Macri's claim. *Accord Voelker*, 353 F.3d at 525 (interpreting Illinois law). Illinois requires privity of contract to state a valid breach of implied warranty. The Court therefore **GRANTS** Defendant's motion to dismiss Plaintiff Macri's breach of implied warranty claim.

### c. Ohio

The Ohio Supreme Court has clearly stated that "longstanding Ohio jurisprudence provides that purchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with whom they are in privity." *Curl v. Volkswagen of Am., Inc.*, 871 N.E. 2d 1141, 1147 (Ohio 2007). Plaintiffs do not challenge Defendant's contention that Plaintiff Jayavelu cannot show privity, but instead contend that "Ohio law converts [] claims for breach of implied warranty [under the UCC] into tort claims when contractual privity is absent." Response at 15–16 (citing *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d. 801, 865 (S.D. Ohio 2012)). Nevertheless, Plaintiffs concede in their opposition that Plaintiff Jayavelu has not pleaded such a tort claim. *See* Response at 16, n.7. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff Jayavelu's breach of implied warranty claim under the UCC. The Court additionally **GRANTS** Plaintiffs leave to amend with respect to Plaintiff Jayavelu's breach of implied warranty claim. Response at 16 n.7; *see Townsend v. Univ.*

8

*of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008) ("Under Federal Rule of Procedure 15(a)(2), leave to amend shall be freely granted when justice so requires.") (internal quotation marks omitted).

### C. Magnuson-Moss Act (Count 3)

Defendant asserts that those Plaintiffs who have not stated a claim for breach of express or implied warranty thus also fail to state a claim under the Magnuson-Moss Act. *See* 15 U.S.C. § 2310(d)(1). Defendant is correct that the Magnuson-Moss Act provides remedies for the breach of an express or implied warranty. *Id.* However, as discussed above, each of the Plaintiffs has at least one surviving express or implied warranty claim. Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' Magnuson-Moss Act claims.

### D. Statute of Limitations (Counts 1–3, 9)

Defendant states that Plaintiff Trotter's claims for breach of the express warranty, the implied warranty of merchantability, the Magnuson-Moss Act, and for violation of Colorado's Consumer Protection Act are barred by the three-year statute of limitations. *See* MTD at 13–15. Defendant's argument as to each claim is based on the assumption that the statute of limitations started to run on the date Plaintiff Trotter purchased the vehicle in April 2013, or at the latest, in June 2013 when she took her Sentra in for repairs. *See* MTD at 13–14; Reply at 8–9.

#### i. Breach of Warranty Claims (Counts 1–3)

Colorado law provides a three-year statute of limitations for breach of warranty claims. *See* Colo. Rev. Stat. Ann. § 13-80-101. The statute of limitations begins to run at the time of accrual. *Id.* Generally, a cause of action for breach of warranty "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and a "breach of warranty occurs when tender of delivery is made." Colo. Rev. Stat. Ann. § 4-2-725.[2] However, "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have

---

[2] Plaintiffs initially contended that the statute governing accrual of warranty claims is Colo. Rev. Stat. Ann. § 13-80-108(6). Response at 16–18. In Colorado, "[w]hen more than one statute of limitations could apply to a particular action, the most specific statute controls over more general, catch-all statutes of limitations." *Hersh Companies Inc. v. Highline Vill. Assocs.*, 30 P.3d 221, 223 (Colo. 2001). Therefore, § 4-2-725 controls. *See Hersh*, 30 P.3d at 225 and n.5; *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 888 (10th Cir. 2005).

been discovered." *Id.* Express warranties to repair and replace, such as those at issue here, have been found to explicitly extend to future performance, thus triggering the exception under § 4-2-725. *See Hersh Companies Inc. v. Highline Vill. Assocs.*, 30 P.3d 221, 225 (Colo. 2001). Because the explicit extension to future performance is not possible in an implied warranty, implied warranties are not subject to this exception. *Carabello v. Crown Controls Corp.*, 659 F. Supp. 839, 842 (D. Colo. 1987) ("By simple definition, however, an implied warranty cannot 'explicitly' extend to future performance.").

All statutes of limitations in Colorado are subject to equitable tolling when "the defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). Plaintiffs allege that Defendant actively concealed the transmission issues from Plaintiff Trotter, preventing her from discovering the true nature of the problem. Compl. ¶¶ 95, 121–124.

Plaintiffs suggest that the statute of limitations did not begin to run for Plaintiff Trotter's express warranty claim until she discovered that her transmission had a defect. *See* Response at 16; *see also Hersh*, 30 P.3d 221, 224 (Colo. 2001) ("Claims for breach of contract or warranty accrue upon discovery of the breach or on the date when, in the exercise of reasonable diligence, the breach should have been discovered.") (citing Colo. Rev. Stat. Ann. § 13-80-108(6)). Plaintiffs identify that date as May 2017, when Plaintiff Trotter took her vehicle in for repairs a second time, stating that it "had no power when coming off the highway and when trying to leave a stop light." Compl. ¶ 95. Only then did a technician tell her the problem was with her transmission and that the shop was unable to fix it. *Id.* In previous visits, the technicians had suggested the problems she experienced were caused by a need to update the vehicle's software, *see id.* ¶ 93, or could not reproduce the problems she experienced at all, *id.* ¶ 94.

Defendant rejects this timeline, and contends that Plaintiff Trotter's breach of express warranty claim accrued in June 2013, the only time during the warranty period when she took her Sentra for repairs. Reply at 8–9; Compl. ¶ 92.

Defendant's attempt to cabin the moment Plaintiff Trotter was aware of the breach of this express Warranty is inappropriate at the pleading stage. Accepting as true Plaintiff Trotter's claim

10

that she did not realize Defendant failed to fix her vehicle until May 2017, Plaintiff Trotter's equitable tolling argument presents a facially plausible claim sufficient to survive at this stage. The Court cannot now determine as a matter of law when Plaintiff Trotter first became aware or should have become aware of the existence of the defect. Therefore, Plaintiff Trotter's claims for breach of express and implied warranty, and her Magnuson-Moss Act claim premised upon them, are not subject to dismissal as barred by the statute of limitations, and the Court **DENIES** Defendant's motion to dismiss these claims. *See U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) ("A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute [of limitations] is apparent on the face of the complaint.") (citing *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir.2010)) (internal quotation marks omitted).

### ii. Colorado Consumer Protection Act Claim (Count 9)

Under Colorado law, the statute of limitations for violations of the Consumer Protection Act ("CPA") runs for three years following either (1) "the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred," or (2) the date when "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Colo. Rev. Stat. Ann. § 6-1-115. Defendant contends that Plaintiff Trotter's claim occurred as early as April 2013, when she purchased the vehicle, and no later than June 2013, when she took the vehicle in for repairs, and that she is thus barred from bringing her claim. MTD at 14. Defendant additionally contends that Plaintiffs' equitable tolling claims lack a sufficient factual basis and should be dismissed. *Id.*

As discussed above with respect to the breach of warranty claims, Plaintiff Trotter's equitable tolling claim presents sufficient facts to support a cognizable legal theory. The Court cannot find as a matter of law that Plaintiff Trotter's claim under the Colorado Consumer Protection Act is barred by the statute of limitations, and **DENIES** Defendant's motion to dismiss Plaintiff Trotter's CPA claim.

11

### E. State Consumer Protection Acts (Counts 7–10)

#### i. Colorado (Trotter)

Defendant contends that monetary damages are unavailable for class actions under Colorado's CPA. Colo. Rev. Stat. § 6-1-113(2) ("[E]xcept in a class action . . . any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable [for actual or statutory damages].") Accordingly, it argues, Plaintiff Trotter has not properly alleged a violation of the CPA.

Plaintiffs contend that under the Supreme Court's opinion in *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, all state law class action limitations are preempted by Federal Rule of Civil Procedure 23. Response at 19 (citing *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)). Defendant relies primarily on a single case to conclude that Colorado's limitation on class actions is intertwined with the state substantive right, and thus cannot be preempted: *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558, at *26–27 (N.D. Cal. Sept. 14, 2016), *on reconsideration in part*, No. 13-CV-03072-EMC, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016).

The *MyFord Touch* court found Justice Stevens' opinion in *Shady Grove* to be the narrowest concurrence in the fragmented opinion, and thus controlling. *Id.* at *27. Applying Justice Stevens' reasoning, the court held that Rule 23 did not supersede Colorado's CPA claim because the CPA's class action limitation was "procedural in the ordinary use of the term but [was also] so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* (citing *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring)). The court found it persuasive that the Colorado limitation on class actions appears in the substantive section of the code, and in the same paragraph as the language that allows plaintiffs to sue for damages: "Except in a class action . . . any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable . . . .". *Id.* (quoting Colo. Rev. Stat. Ann. § 6-1-113(2)).

The Court finds this damages issue to be premature to decide at this early stage. As in *MyFord Touch*, Defendant's concerns can be addressed on a motion for class certification. The Court therefore

**DENIES** Defendant's motion to dismiss Plaintiff Trotter's Colorado CPA claim.

### ii. Ohio (Jayavelu)

Defendant next contends that Plaintiff Jayavelu's claim under the Ohio Consumer Sales Practices Act ("Ohio CSPA") must be dismissed because such a claim requires that a supplier acted in the face of "prior notice that its conduct was deceptive or unconscionable." MTD at 18; *see also* Ohio Rev. Code § 1345.09(B).

To adequately plead notice, a plaintiff must allege either that "a specific rule or regulation has been promulgated [by the Ohio Attorney General] under R.C. 1345.05 that specifically characterizes the challenged practice as unfair or deceptive," or that "an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to public inspection." *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055–56 (N.D. Ohio 2014) (quoting *Johnson v. Microsoft Corp.*, 155 Ohio App. 3d 626, 636 (2003), *aff'd*, 106 Ohio St. 3d 278 (2005)). To qualify as sufficient notice, the defendant's conduct "must be substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in R.C. 1345.09(B)." *Id.* (citing *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St. 3d 5, 6 (Ohio 2006)) (internal quotation marks omitted). "Substantial similarity means a similarity not in every detail, but in essential circumstances or conditions." *Id.*

Plaintiffs allege that Defendant "has committed unfair, deceptive, and unconscionable acts" under Ohio Rev. Code § 1345.09(B), by "knowingly concealing the defect in the class vehicles, [and] failing to inform Plaintiff Jayavelu and the other Ohio Subclass Members of this defect." Compl. ¶ 198. Plaintiffs contend that *Mason v. Mercedes-Benz USA, LLC*, 2005-Ohio-4296, 2005 WL 1995087 (Ct. App. 2005) and other cases finding analogous acts to be "deceptive or unconscionable" provided notice to Defendant. *Id.* ¶ 202.

In *Mason*, the Ohio Court of Appeal affirmed the jury's award of treble damages, finding the defendant's breach of the implied warranty of merchantability "a deceptive or unconscionable act." *Mason,* 2005-Ohio-4296 ¶ 24. The court pointed out that under Ohio Rev. Code § 1345.02, "the act or practice of a supplier in representing any of the following is deceptive," including: (1) "[t]hat the subject of a consumer transaction has sponsorship, approval, performance

13

1 characteristics, accessories, uses, or benefits that it does not have"; and (10) "[t]hat a consumer

2 transaction involves or does not involve a warranty, a disclaimer of warranties or other rights,

3 remedies, or obligations if the representation is false." *Id.* ¶ 28.

4 But *Mason* based its reasoning in part on the sheer number of problems that plagued the plaintiff's vehicle. That is not sufficiently similar to the allegations here—which identify a single defective component—to satisfy the requirements of Ohio Rev. Code § 1345.09(B). *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 870 (S.D. Ohio 2012) ("The conduct alleged in *Mason* is therefore unlike the conduct alleged here, in which PCNA allegedly placed a vehicle into the stream of commerce with one defect that required repair on one occasion."). Plaintiffs' other cited cases are similarly unavailing, presenting facts even less analogous to the present case than the facts of *Mason*. *See Borror v. MarineMax of Ohio, Inc.*, Case No. OT-06-010, 2007 WL 431737 (Ohio Ct. App. Feb. 9, 2007) (addressing individual sale of a marine vessel alleging fraud of previous owner); *Bellinger v. Hewlett Packard Co.*, 2002-Ohio-1643, 2002 WL 533403 (Ohio Ct. App. April 10, 2002) (finding complaint alleging fraud in sale of ink cartridges failed to state a claim for deceptive or unconscionable acts).

Because Plaintiff Jayavelu does not satisfy the requirements of Ohio Rev. Code § 1345.09(B), he is precluded from advancing an Ohio CSPA claim on behalf of a class. The Court **GRANTS** Defendant's motion to dismiss Plaintiffs Jayavelu's Ohio CSPA class action allegations.

### iii. New York (Cruz)

Defendant contends that Plaintiff Cruz has failed to allege actual harm caused by Defendant's alleged deception, as implicitly required by N.Y. Gen. Bus. Law § 349. MTD at 17. Defendant concedes that "repair expenses or diminution of value could support a Section 349 claim," but contends that Plaintiff Cruz has made no such allegations. Reply at 13. Plaintiff Cruz's allegations, including that she traveled multiple times for failed repairs of her vehicle, and her claim that but for Defendant's deception, she would have paid less for her vehicle suffice at this stage. Compl. ¶¶ 59, 68, 84–90, 116; *see Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.*, 120 Misc. 2d 848, 854 (App. Term 1983) (finding violation of § 349 resulted

14

in damages due to plaintiff driving to car showroom in response to a deceptive advertisement).

The Court therefore **DENIES** Defendant's motion to dismiss Plaintiff Cruz's New York General Business Law claim.

### iv. Massachusetts (Garrison)

Defendant contends that Plaintiff Garrison's CPA claim fails because Massachusetts law permits implied warranty claims only if: (1) a product causes personal injury or property damage; or (2) the product fails to meet a legally required and government-enforced standard. MTD at 16–17. Defendant cites the following passage from the Supreme Judicial Court's ruling in *Innacchino*:

> Because the term "defect" is conclusory and can be subjective as well, a bare assertion that a defendant, while representing the opposite, has knowingly manufactured and sold a product that is "defective," or suffers from "safety-related defects," does not suffice to state a viable claim. See *Schaer v. Brandeis Univ.*, 432 Mass. 474, 477, 735 N.E.2d 373 (2000) ("we do not accept legal conclusions cast in the form of factual allegations"). See also part 3, *infra.* Where, as in this case, there is no allegation that the plaintiffs—or indeed anyone else—have suffered personal injury or property damage, the complaint must identify a legally required standard that the vehicles were at least implicitly represented as meeting, but allegedly did not. When the standard that a product allegedly fails to meet is not one legally required by and enforced by the government, a claim of economic injury based on overpayment lacks the premise that the purchase price entitled the plaintiffs to a product that met that standard.

*Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 632–33, 888 N.E.2d 879, 888 (2008).

This *Iannacchino* holding has been clarified by later rulings of the Supreme Judicial Court, which has explained that:

> [A]s the *Rhodes, Casavant, Iannacchino*, and *Hershenow* decisions indicate, a plaintiff bringing an action for damages under [the Massachusetts CPA], must allege and ultimately prove that she has, as a result, suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself.

*Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503, 984 N.E.2d 737, 745–46 (2013).

Here, Plaintiff Garrison has sufficiently alleged an injury that is distinct from Defendant's

alleged deception, due to the transmission problems that actually manifested in her vehicle.[3]

Compl. ¶¶ 97–104. The Court therefore **DENIES** Defendant's motion to dismiss Plaintiff Garrison's CPA claim.

### F. Unjust Enrichment & Remedies

#### i. Equitable Relief

Defendant moves to dismiss all of Plaintiffs' claims for equitable relief. Plaintiffs, in addition to requesting equitable remedies in their first twelve claims, seek an order directing Defendant to "properly repair all of the class vehicles immediately, offer rescission to the [class members] by repurchasing their class vehicles for their full cost, reimbursing the lessees of the class vehicles the monies they have paid toward their leases, recalling all defective vehicles that are equipped with the defective transmissions, and ceasing and desisting from marketing, advertising, selling, and leasing the class vehicles." Compl. ¶ 268.

"It is a basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law." *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S. Ct. 2031, 2035, 119 L. Ed. 2d 157 (1992)). "[S]everal courts in this district have barred claims for equitable relief—including claims for violations of California consumer protection statutes—at the motion to dismiss stage where plaintiffs have alleged other claims presenting an adequate remedy at law." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017).[4]

Because the Court has found Plaintiffs have sufficiently pled claims that provide for damages, including those for breach of express warranty and violation of the Magnuson-Moss Act, the Court finds that Plaintiffs have an adequate remedy at law, and consequently are barred from seeking equitable relief. The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiff's

---

[3] Defendant's argument that not all putative class members actually experienced transmission problems is more appropriately considered at the class certification phase. *See* Reply at 14.
[4] Plaintiffs cite to *Astiana v. Hain Celestial Grp,. Inc.*, 783 F.3d 753 (9th Cir. 2015) to argue that equitable claims should not be dismissed for the sole reason that they are "duplicative of or superfluous to" other claims. *Asitana*, 783 F.3d at 762. *Astiana*, which addresses the potential dismissal of the *cause of action* of unjust enrichment (as opposed to the *remedy* of restitution), is not in conflict with *Mort*, *Morales*, or any of the other longstanding precedent that equitable remedies are not available when the moving party has an adequate remedy at law.

16

claims for equitable relief.

### ii. Unjust Enrichment

Defendant contends that Plaintiffs' claim for unjust enrichment is precluded by the express warranty governing the same subject matter. MTD at 21.

Actions in quasi-contract cannot lie when an express contract between the same parties governs the subject matter in question. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("Under both California and New York law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."). As noted above, the express warranty "covers any repairs needed to correct defects in materials or workmanship of covered parts." Compl. ¶¶ 3, 60. Plaintiffs' contention that their unjust enrichment claim additionally covers fraud or bad-faith activities of Defendant separate from those covered by the express warranty is unconvincing, as Plaintiffs fail to plead any such fraudulent acts in their claim. *See id.* ¶¶ 277–281.

The Court therefore **GRANTS** Defendant's motion to dismiss Plaintiffs' claims for unjust enrichment.

### iii. Declaratory Relief

When presented with a request for declaratory relief, "the district court may, in its discretion, determine whether maintaining jurisdiction over the declaratory judgment action is appropriate." *Transamerica Life Ins. Co. v. Jurin*, No. C 14-01881 LB, 2015 WL 355717, at *5 (N.D. Cal. Jan. 27, 2015) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287–88 (1995)). The Ninth Circuit has established that "[i]n general…when other claims are joined with an action for declaratory relief…the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) (quoting *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).

Here, as Defendant has not articulated any prejudice resulting from these claims proceeding, the Court finds that it is premature to dismiss Plaintiffs' claims for declaratory relief. *See Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-CV-02349-TEH, 2015 WL 1548872, at *9 (N.D. Cal. Apr. 7, 2015) (denying defendant's motion to dismiss declaratory relief

17

due to failure to show any prejudice that would result from allowing the claim to proceed). The Court therefore **DENIES** Defendant's motion to dismiss Plaintiffs' claims for declaratory relief.

## IV. CONCLUSION

Defendant's motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND** as to:
- Plaintiff Macri's breach of implied warranty claim;
- Plaintiff Jayavelu's breach of implied warranty claim, to the extent based on the UCC;
- all Plaintiffs' claims for equitable relief.

Defendant's motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to:
- Plaintiffs' claims for unjust enrichment;
- Plaintiff Jayavelu's Ohio CSPA class action allegations.

Defendant's motion to dismiss is **DENIED** as to all remaining claims. Plaintiff's request for leave to amend Plaintiff Jayavelu's breach of implied warranty claim to plead a tort claim is **GRANTED**. Any amended complaint must be filed within 21 days of the date of this order. The amended complaint may not add new causes of action or plaintiffs, and the scope of leave to amend extends only to the claims identified above.

**IT IS SO ORDERED.**

Dated: 5/16/2018

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

18